[Civ. No. 4573. Third Appellate District.—October 25, 1932.]

J. FARBSTEIN, as Administrator, etc., Appellant, v. PACIFIC OIL TOOL COMPANY, LTD. (a Corporation), Respondent.

158

R. Dechter for Appellant.

Robert H. Dunlap and George R. Larwell for Respondent.

PLUMMER, J.—The trial court sustained the defendant's demurrer to the plaintiff's third amended complaint without leave to amend. From the judgment entered thereafter the plaintiff appeals.

The action was originally begun by Della Greenberg, a stockholder in the defendant corporation, by a complaint filed December 13, 1929, in which it was sought to enjoin the sale of the stock belonging to the plaintiff for the failure to pay an assessment levied thereon, and also to have the assessment declared void. After the decease of Della Greenberg, J. Farbstein, the administrator of her estate, was substituted as plaintiff. The demurrer interposed by the defendant was general, and the question before us upon this appeal is whether the third amended complaint states facts sufficient to constitute a cause of action. Omitting the title, formal allegations of the complaint, and the allegations of plaintiff's ownership of shares

of stock in the defendant corporation, the complaint is as follows:

"That on or about August 14, 1929, the articles of incorporation of the defendant corporation provided, and do now provide that the stock of the defendant corporation should be non-assessable; that on or about August 14, 1929, the articles of incorporation of the defendant corporation provided, and do now provide that the number of directors of the defendant corporation shall be three; that at all times herein mentioned the by-laws of the defendant corporation provided, and do now provide that the secretary of the defendant corporation shall mail, at least five days before the date of any meeting, either regular or special, a notice of the time and place of such meeting; that the by-laws of the defendant corporation at all times herein mentioned did not provide, and do not now provide for the time and place of regular meetings.

"That on or about August 14th, 1929, a meeting of the Board of Directors was attempted to be held at the office of the defendant corporation in the City of Vernon; that no notice of such meeting was ever mailed by the secretary of the defendant corporation, of the time and place of such meeting of the Board of Directors so attempted to be held as aforesaid on August 14th, 1929; that no waiver of notice was executed of such meeting so attempted to be held on August 14th, 1929; that at said meeting there were present as directors, W. T. Wells, Lee Champion, W. G. Lane, Roy R. Renouf, H. E. Hofer and absent, J. Farbstein; that on or about August 14, 1929, said corporation, by its articles of incorporation, only had, and only could have three directors; that on or about said August 14, 1929, the directors of said defendant corporation were Lee Champion, Roy R. Renouf and J. Farbstein; that on or about said August 14, 1929, W. T. Wells, W. G. Lane and H. E. Hofer were not directors of the defendant corporation; that at said meeting so attempted to be held on August 14th, 1929, there was attempted to be passed a resolution amending the articles of incorporation as follows:

"1. Change the name of the defendant corporation by adding the word 'Ltd.'; the place of business to County of Los Angeles;

"2. Increasing the capital stock of the corporation to 300,000 shares of the par value of $1.00 each from an authorized capital stock of $150,000.00 divided into 150,000 shares of the par value of $1.00 each;

"3. Increasing the number of directors of the corporation from three to five;

"4. That shares of stock shall be assessable from time to time by the board of directors subject to the provisions concerning assessments on capital stock of corporations which may from time to time exist or be enforced in the State of California;

"That said resolution of said board of directors was alleged to contain, and showed the assent of a majority of the stockholders executed prior to said resolution, and which assent is set out in said resolution; that the certificate filed with the Secretary of State and the County Clerk of Los Angeles County of said amendment of articles of incorporation so attempted to be passed as aforesaid, on or about August 14th, 1929, was certified by one W. T. Wells who, at the time of the certification, was not a director nor a president; that the copy of the certificate of amendment of said articles of incorporation filed in the County Clerk's office, further certifies that such amendment was passed by the unanimous vote of five directors, and in such copy the word 'five' is scratched out and the word 'all' written above it, when in truth and in fact, and as the very minutes of said meeting show, director J. Farbstein was absent.

"That alleged assent of stockholders to the amendment of the articles of incorporation as aforesaid, contained the signature of W. T. Wells as owning 22,848 shares of the capital stock of the defendant corporation; that in truth and in fact said W. T. Wells was not at said time a stockholder owning any stock in said corporation, as disclosed by the books of the defendant corporation; that the alleged assent of the stockholders to such amendment to the articles of incorporation contained the signature of the Champion Supply Company, a Wyoming corporation, as owning 36,000 shares of the capital stock of the defendant corporation; that said Champion Supply Company, a Wyoming corporation, was at all times herein mentioned transacting business in the State of California, but has failed to qualify pursu-

ant to California laws applicable to the doing business in the State of California by foreign corporations; that there was not at the time of the alleged execution of such assent by the stockholders to the amendment of the articles of incorporation, any authorization of the Champion Supply Company on file in the defendant corporation authorizing the execution of such assent on behalf of the Champion Supply Company by Lee Champion, who signed said assent on behalf of said corporation.

"That on or about said August 14, 1929, when said articles of incorporation were attempted to be amended as aforesaid, there was present one Roy Renouf, a director of said corporation and a stockholder owning 24,911 shares of the capital stock of said corporation, that at said time and place the only matters discussed by the people present at said meeting was the matter of change of name of said corporation by adding the word 'Ltd.'; that the assents to the amendment of the articles of incorporation were signed at said time by said persons then present; that at said time and place the other persons present represented to said Roy Renouf that said amendment only contained the fact of the change of name, by adding the word 'Ltd.' and nothing else; that said Roy Renouf believed and relied on said representation and affixed his signature to the assent to the amendment of the articles of incorporation, and thereafter voted for the resolution amending the articles of incorporation, and had he known that said amendment contained anything else, such as authority of the board of directors to levy assessments on stock, he would not have signed said assent to said amendment of the articles of incorporation; that had said Roy Renouf not executed said amendment of the articles of incorporation, said assent would not have had a majority of the stock of said corporation to said amendment.

"That on or about October 23, 1929, a meeting was alleged to have been held of the board of directors of the defendant corporation, at which meeting a resolution was adopted levying an assessment on the stock of the defendant corporation; that no notice whatsoever was mailed by the secretary of said defendant corporation, of the date and place of such meeting as required by the by-laws; that there was present at said meeting as directors of said defendant corporation,

W. T. Wells, Lee Champion, H. E. Hofer, and absent W. G. Lane and O. G. Keil; that no waiver of notice was ever executed of said meeting; that the only director present at said meeting was Lee Champion; that at said time and said place, to-wit: October 23, 1929, neither W. T. Wells nor H. E. Hofer were directors of said corporation; that the alleged resolution levying said assessment failed to state the name of the person to whom said assessment was payable; that as aforesaid at all times herein mentioned the total subscribed outstanding and/or issued capital stock of the defendant corporation was 132,665 shares.

"'That the stock of said defendant corporation is not listed on any stock exchange and has no sales market; that if said stock is sold, said stock cannot be purchased back in the open market; that persons at present claiming to be the Board of Directors are, and for some time past have been under the control and dominion of Lee Champion; that said Lee Champion and the present persons claiming to be the Board of Directors of the defendant corporation have schemed and conspired to eliminate from ownership and participation in the affairs of the defendant corporation, this plaintiff, as well as other stockholders, representing in all a total of over 60,000 shares of stock, or almost one-half of the total amount of stock outstanding; that said Lee Champion caused two informal meetings of the Board . of Directors and the stockholders to be held about a month and a week, respectively, prior to the alleged date of the sale of the stock under such assessment, and said directors assured such stockholders that they would try to adopt a plan to liquidate the business of the defendant corporation by selling the business to some larger concern without enforcing any assessment of stock, and lulled said stockholders so representing about 60,000 shares of stock into a feeling of security that payment of the assessment would not be necessary and their stock would not be sold under said levy of assessment; that such attempted levy of assessment was part of a plan and scheme on the part of said present . Board of Directors, including Lee Champion, to eliminate the stockholders other than the present Board of Directors from the corporation, and thus enable the present Board of Directors to appropriate the assets of the defendant corporation to their own use and benefit.

"Wherefore, plaintiff prays judgment against the defendant that said assessment be declared void and the amendment of the articles of incorporation of no force and effect, and for such other and further relief as to the court may seem equitable in the premises."

The contention of the respondent is that while some technical irregularities may be shown by the complaint, when analyzed it shows a substantial compliance with the requirements of the code, that the election of the directors cannot be inquired into in this action, and that the assessment cannot be set aside nor recovery of the stock had by the plaintiff without tendering the amount of the assessment; that the complaint affirmatively shows that the amendments to the articles of incorporation were made by a resolution adopted by five persons acting at least as *de facto* directors of the corporation after the resolution providing for a change in the articles of incorporation had been approved by the requisite number of stockholders.

In the case of *Consumers Salt Co.* v. *Higgins,* 208 Cal. 537 [282 Pac. 954], wherein it was sought to raise the question of the legality of the election of certain directors of the corporation, it was held that neither the corporate creditors nor the corporation, nor the stockholders, nor the director himself would be allowed to raise the objection in an action involving an assessment. It was further held that, "an assessment or call by a *de facto* board of directors is valid". In other words, the right of a person assuming to act as a director could be questioned only in *quo warranto* proceedings.

To the same effect is the text in 7 Ruling Case Law, page 346, where it is said: "A call for an assessment on a stock subscription, by a *de facto* board of directors, is binding and the validity of the directors' election cannot be questioned in an action to enforce the assessment". See, also, *San Joaquin L. & W. Co.* v. *Beecher,* 101 Cal. 70 [35 Pac. 349], where, speaking of the directors, we find the following: "If not properly, they were at least nominally elected, organized as a board of directors, and acted as such, and being *de facto* officers, their acts as such are valid." The validity of an assessment was involved in that action.

In *Balfour-Guthrie Inv. Co.* v. *Woodworth,* 124 Cal. 169 [56 Pac. 891], the questions involved in the instant action are

very similar to the questions there considered, and it was held that the validity of the proceedings could not be inquired into in an action to hold invalid a transfer and assignment. The court used the following language: "The objection of the defendant to the regularity of the stockholders' meeting at which the directors were elected, was properly overruled. For the purposes of this action it was immaterial whether this meeting was properly called or not, or whether the election was by the stockholders in person or by proxy, or whether the proxies were sufficient in form to entitle the holder to vote at the election. The records of the corporation show that five persons were elected at that meeting to serve as its directors, and, whether their election was regular or not, they assumed the trust and became at least *de facto* directors. So long as they held this position unchallenged by any members of the corporation, their acts as directors were binding upon the corporation and upon strangers dealing with it."

It will also be noticed that in the allegations of the complaint where it is said that no notice was mailed and no waiver was filed, it is not alleged that notice in fact was not given, or that the absent director or stockholder did not in fact have actual notice of the meetings referred to.

Respondent also calls our attention to section 346 of the Civil Code, as it then read (which is now section 388), and also to section 347 of the Civil Code (which is now section 339). Section 346 (changed in number as just stated) provided, and still provides, that: "No assessment is invalidated by a failure to make publication of the notice heretofore provided for, nor by the non-performance of any act required to enforce the payment of the same; but in case of any substantial error or omission in the course of proceedings for collection, all previous proceedings, except the levying of the assessment, are void, and publication must be begun anew." And section 347 (now section 339) specifies that no action can be sustained to recover stock sold for delinquent assessments upon the ground of irregularity or defect in notice of sale, unless the party seeking to maintain such action pays, or tenders to the corporation, or to the party holding the stock sold, the sum for which the same was sold, together with the assessment, or subsequent assessments, if any, remaining unpaid.

The appellant assigns nine different reasons as to why the judgment should be reversed. The first relates to notices, which we have answered and which need not be further considered. ■ The second assignment alleges that the procedure outlined in section 362 of the Civil Code was not complied with. The complaint, however, shows that the resolution levying the assessment was adopted by a majority vote of *de facto* directors, and as we shall hereafter show, was authorized by the amended articles approved by the assent of the requisite number of shareholders owning at least a majority of the outstanding stock.

Section 362 of the Civil Code provides for changing the name of the corporation, increasing the capital stock, increasing the number of directors, and also permitting a change in the stock from nonassessable to stock that can be assessed. After the proceedings had been taken and had by the board of directors, and also by the stockholders, a certificate was filed with the county clerk of the county of Los Angeles and also with the Secretary of State.

■ The contention that the assent was not given by the requisite number of stockholders is based upon the allegation that W. T. Wells, who signed the consent as the owner of 32,848 shares of the capital stock of the defendant corporation, was not shown by the books of the corporation to be the owner of that number of shares; likewise, that the consent of the Champion Supply Company as the owner of 6,000 shares was ineffectual because that company was not qualified to do business in the state of California; and further, that the assent of Roy R. Renouf, holding 24,911 shares, was secured by representations that the consent went only to changing the name of the corporation by adding the letters "Ltd." The complaint, however, contains no allegations of any facts showing that the consent of Renouf was obtained by any fraudulent or improper means, and what is set forth amounts only to the conclusions of the pleader.

■ Our attention has not been called to any case holding that the mere ownership of stock in a domestic corporation by a foreign corporation constitutes the transacting of business by a foreign corporation within this state. On the other hand, in Fletcher Cyc. of Law of Corporations, volume 9, section 5940, the text is to the effect that the purchase

by a foreign corporation of stock in a domestic corporation is not doing business within the state where the domestic corporation is located. Even though it should be held that owning stock by a foreign corporation in a domestic corporation is doing business, the voting of the stock does not appear to be prohibited by section 408 of the Civil Code. The acts there prohibited, and for which penalties are attached, do not include the voting of stock.

As to the allegation concerning the ownership of stock by W. T. Wells, it may be further added that the allegation simply states that the books of the corporation do not show such ownership. The allegation that Wells was not the owner is, of course, only a conclusion, and for all that appears in the complaint, Wells might be the owner of the 22,848 shares without any transfers having been made upon the books of the corporation. The exhibiting of the shares of stock regularly transferred to him by assignment thereof, would establish his ownership.

What we have said covers objections Nos. 3 and 4, and brings us to objection No. 5, where the appellant's contention is that the articles of incorporation could not have been amended to make the stock assessable without the entire voting of all the stockholders. As we have just stated, section 362 of the Civil Code, as it read in 1929, gave authority to the board of directors and to a specified number of the shareholders to alter the articles of incorporation. In pursuance of this section the articles of incorporation of the defendant corporation were amended so as to permit the board of directors to levy an assessment on the outstanding capital stock of the corporation. In this state, corporations are mere creatures of the law. Section 1, article XII, of the Constitution, at the time of the proceedings referred to herein, then read: "Corporations may be formed under general laws but shall not be created by special act. All laws now in force in the State concerning corporations, and all laws that may hereafter be passed pursuant to this Section, may be altered from time to time or repealed." The amendment to this section adopted in November, 1930, changed the wording, but not the substance of the section so far as this case is concerned. Thus section 362 of the Civil Code, relative to the power to change the articles of incorporation of a corporation

so as to make the stock assessable, is constitutional, and a valid change of the articles can be made under the provisions of said section so as to empower the board of directors to levy assessments.

The case of *Lum* v. *American Wheel & Vehicle Co.*, 165 Cal. 657 [133 Pac. 303, Ann. Cas. 1915A, 816], cited by appellant, is not controlling here, for the simple reason that the articles involved in the Lum case did not provide for the assessment of stock. The stock had been issued as nonassessable stock and the articles of incorporation had not been changed to permit the assessment thereof.

The power of the legislature to authorize stockholders and directors to change the articles of incorporation affecting the liability of stockholders, is amply supported by the case of *McGowan* v. *McDonald*, 111 Cal. 57 [43 Pac. 418, 52 Am. St. Rep. 149]. (See, also, 6 Cal. Jur., p. 620.) Cases decided in other states having different constitutional provisions are not controlling here.

■ The sixth ground assigned for the invalidity of the assessment is that the assessment was levied before all of the stock had been subscribed. Prior to 1929 the code provided for assessments after one-fourth of the capital stock had been subscribed. In 1929 section 331 of the Civil Code was amended to read as follows: "Shares are not assessable except as provided in this article. If the articles expressly conferred such authority, and subject to any limitations therein contained, the directors of any corporation may in their discretion levy and collect assessments upon all shares of any or all classes made, subject to assessments by the articles. This authority is additional to that of making calls for the unpaid subscription price of shares." Nothing is contained in the amended section as to the number of shares which must be subscribed or paid for before an assessment can be levied. The articles of incorporation of the defendant as amended provided that the shares should be assessable from time to time. That this power does not depend upon all of the capital stock having been previously subscribed for, is shown by the case of *Bottle Min. & Mill. Co.* v. *Kern*, 9 Cal. App. 527 [99 Pac. 994]. The capital stock of the corporation in that case was fixed at 500,000 shares, of which only 426,000 shares had been subscribed for.

■ The seventh ground alleged by the appellant as a reason for holding the assessment invalid is that it was levied at a meeting not regularly called and assembled. This raises again an issue which we have heretofore considered. The complaint alleges that as to the meeting at which the assessment was levied, no notice was mailed by the secretary. It does not state, however, that notice was not given, and that the directors were not regularly assembled as a board. It does show at least a board of directors *de facto,* acting.

■ Objection number eight is to the effect that no name was given in the resolution specifying the person to whom the assessment should be paid. This, however, is unnecessary. A statement that the assessment is payable to the secretary of a corporation is sufficient. In *Stephens* v. *Lemoore Canal & Irr. Co.,* 22 Cal. App. 579 [135 Pac. 707], this court held a resolution making the payment of an assessment to the secretary of a corporation without naming the secretary, sufficient.

■ Objection number nine raises the question of estoppel. A reading of paragraph 7 of the complaint as set out herein shows that it is wholly insufficient to raise the question of estoppel, and no further consideration need be given thereto.

While technical irregularities are shown to have characterized the proceedings involved herein, we think that substantial compliance has been had, and as the plaintiff has not tendered or offered to pay to the purchasers the amount paid for the stock sold and delinquent, nor offered to pay to the corporation the assessment or any assessments, that a cause of action has not been pleaded.

The judgment is affirmed.

Thompson (R. L.), J., and Pullen, P. J., concurred.