[No. B213499. Second Dist., Div. One. Dec. 23, 2009.]

CARLOS HARO et al., Plaintiffs and Appellants, v.
FERNANDO IBARRA et al., Defendants and Respondents.

COUNSEL

Nunziato Buckley Weber, Tom A. Nunziato and Illece Buckley Weber for Plaintiffs and Appellants.

Christensen & Auer, Stephen G. Auer and Vicki C. Gadbois for Defendants and Respondents Alpha Medical Management, LLC and Medical Management Consultants, LLC.

Herzfeld & Rubin, Craig L. Winterman and Stephanie L. Rockey for Defendants and Respondents Fernando Ibarra, Alfonso Barragan, Manuel Figueroa, Maria Christina Hernandez and Omar Perez.

Reback, McAndrews, Kjar, Warford & Stockalper, Robert C. Reback and Thien T. Nguyen for Defendant and Respondent Associated Hispanic Physicians of Southern California, Inc.

OPINION

CHANEY, J.—We address in this opinion two issues. The first is the sufficiency of the allegations in a complaint to survive demurrer. Second, we address whether equitable considerations might warrant an exception to the requirement that a shareholder maintain continuous ownership of stock in order to maintain standing to bring a shareholder derivative action. We will hold that the allegations here were sufficient to survive the demurrers and that equitable considerations bear upon shareholder standing.

Plaintiffs and appellants, Carlos Haro, Carlos Meza, Marcos Lemor, Antonio Alarcon, Miguel Rodriguez, and Jose Delgado (collectively Appellants) are physicians who are former shareholders of defendant and respondent, Associated Hispanic Physicians of Southern California, Inc. (AHP), a medical corporation. Defendants and respondents Fernando Ibarra, Alfonso

Barragan, Manuel Figueroa, Maria Christina Hernandez, and Omar Perez (collectively Individual Respondents) are physicians who are officers, directors, and other shareholders in AHP. Defendant and respondent Alpha Medical Management, LLC (Alpha), is a medical management company that provides management services to AHP. Ibarra and Barragan own defendant and respondent Medical Management Consultants, LLC (MMC), which in turn owns Alpha.

Appellants objected when Ibarra, Barragan, and AHP levied an assessment of $57,291.67 per share against Appellants. Appellants refused to pay the assessment, and the controlling directors consequently declared Appellants' shares to be forfeited. Appellants then filed suit, seeking declaratory relief that the stock forfeiture was improper and, in the alternative, damages for conversion. Appellants also alleged derivative causes of action for harm to the corporation.

The trial court sustained demurrers to the first amended complaint (FAC) and the second amended complaint (SAC) on the grounds that Appellants lacked standing because they had not paid the assessment and were no longer shareholders. The court thus dismissed the complaint. Assuming, as we must, "the truth of the complaint's properly pleaded or implied factual allegations," we will reverse because the SAC states a cause of action. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We further will hold that equitable circumstances alleged here warrant an exception to the requirement that Appellants maintain continuous ownership of the shares in order to bring a shareholder derivative action.

## BACKGROUND

Appellants were shareholders of AHP, a medical corporation that Appellants describe as an independent practice association (IPA). Appellants' shares in AHP were forfeited when they refused to pay an assessment that they believed was part of a scheme by Ibarra and Barragan to force them out.

### I. *First Amended Complaint*

Appellants filed a complaint in October 2007. The parties subsequently stipulated to the filing of the FAC, which was filed in March 2008. In the FAC, Appellants stated that they collectively owned 16 of the 54 shares (29.62 percent) of AHP; Barragan and Ibarra together owned 18 shares (33 1/3 percent). Appellants alleged that Barragan and Ibarra had controlled

AHP improperly and breached their fiduciary obligations to AHP and its shareholders. When Appellants objected to Barragan and Ibarra's improper conduct, Barragan and Ibarra devised a scheme to "deny [Appellants] their rights as fully vested shareholders of AHP." The FAC alleged six causes of action. First, Appellants sought declaratory relief, asking for "a judicial determination of their rights and a declaration as to whether the forfeiture of their shares of AHP stock was ultra vires and wrongful."

## A. First Cause of Action

As to the first cause of action, the FAC alleged that Barragan and Ibarra declared that appellant Alarcon's two shares of AHP were forfeited, with no basis or authority for the forfeiture.[1] Barragan and Ibarra then "levied an assessment of $57,291.67 per share of AHP's stock and warned Haro, Meza, Lemor, Rodriguez and Delgado that failure to pay said levy would result in the forced sale of the shares." The "stated purpose of the assessment was to fund the purchase of an IPA in Mexico," which Appellants alleged was "a radical departure from the normal business of AHP." The FAC further alleged that the assessment was improper and ultra vires because it was not approved in accordance with AHP's articles and bylaws; the AHP directors had not disclosed "all the material terms of the transaction to purchase a foreign business"; the acquisition of a foreign business was contrary to the stated purposes and bylaws of AHP; and the assessment was not made for the reasonable needs of AHP, was not prudent, and was fraudulent. When Appellants refused to pay the assessment, Ibarra and Barragan forfeited their shares and ousted them as shareholders. Appellants contended that Figueroa, Hernandez, and Perez were not actively involved in the wrongful conduct, but they were aware of the misconduct and failed to take any corrective action. Appellants contended that, despite the forfeiture of their shares, they had standing to bring a shareholder derivative action because the assessment was void, fraudulent, and ultra vires.

## B. Second Cause of Action

The second cause of action was a derivative action, alleging breach of fiduciary duty based on Alpha's contract to provide management services to AHP. Appellants alleged that Alpha had acquired or merged with MMC, and that Alpha and MMC were owned by Barragan and Ibarra, who had "enjoyed

---

[1] The FAC also alleged that Barragan and Ibarra wrongfully forfeited the shares of Hector Ziperovich and "ousted him as a shareholder." Ziperovich subsequently entered into a settlement agreement with defendants.

substantial personal gain" from the arrangement. The FAC alleged that "AHP had the financial ability and economic incentive to provide for its own management services through an entity owned and controlled by itself and the pursuit of such an opportunity would have been a natural and reasonable expansion of AHP's business." The second cause of action accordingly was a derivative action for breach of fiduciary duty, misappropriation of corporate opportunities, constructive fraud, and accounting.

### C. Remaining Causes of Action

The third cause of action, also a derivative claim, alleged breach of fiduciary duty by constructive fraud, on the bases that Alpha and MMC overcharged AHP for management services and that Barragan and Ibarra were knowingly overcharging AHP for rent. The fourth cause of action, a derivative claim, was for breach of fiduciary duty and sought an accounting of AHP's earnings and expenses. The fifth cause of action was a personal action for conversion, in the alternative to the derivative claims. Appellants alleged that AHP, Barragan, and Ibarra wrongly converted Appellants' AHP shares and sought an accounting of AHP's earnings and expenses so that Appellants could determine the value of the shares. Sixth, Appellants asked to be allowed to inspect AHP's records, pursuant to Corporations Code section 1601.[2]

### D. Demurrers

Respondents filed demurrers to the FAC. Individual Respondents filed a general demurrer to the entire FAC. AHP demurred to Appellants' second, third, and fourth derivative causes of action on the ground that Appellants lacked standing to bring a derivative suit because they had failed to comply with section 423, subdivision (m), which requires that a delinquent assessment be paid in order for shareholders to bring an action to recover the shares sold for the delinquent assessment.[3] AHP further argued that Appellants lacked standing because they had not maintained continuous ownership of the stock. AHP also contended that the fifth cause of action, for conversion, and the sixth cause of action, for failure to produce records, were uncertain.

---

[2] All further statutory references are to the Corporations Code unless otherwise specified.

[3] Section 423 states that "[n]o action shall be maintained to recover shares sold for delinquent assessments, upon the ground of irregularity in the assessment, irregularity or defect of the notice of sale, or defect or irregularity in the sale, unless the party seeking to maintain the action first pays or tenders to the corporation, or the party holding the shares sold, the sum for which the shares were sold, together with all subsequent assessments which may have been paid thereon and interest on such sums from the time they were paid." (§ 423, subd. (m).)

Alpha and MMC demurred to the second and third causes of action on the basis that Appellants did not have standing to bring a derivative suit because they had ceased to be shareholders. Alpha and MMC demurred to the fifth and sixth causes of action, arguing that Appellants did not have standing to bring personal claims against them.

Appellants opposed the demurrers. Appellants argued, inter alia, that section 423, subdivision (m) did not apply because the assessment was void, citing *Herbert Kraft Co. Bank v. Bank of Orland* (1901) 133 Cal. 64 [65 P. 143] (*Kraft*) and *Cheney v. Canfield* (1910) 158 Cal. 342 [111 P. 92] (*Cheney*), and other cases for the proposition that the assessment was void.

In June 2008, the trial court held a hearing to address the demurrers. The court sustained without leave to amend the demurrers to the second, third, and fourth causes of action on the basis that Appellants were no longer shareholders and therefore lacked standing to bring a shareholder derivative suit, citing *Grosset v. Wenaas* (2008) 42 Cal.4th 1100 [72 Cal.Rptr.3d 129, 175 P.3d 1184] (*Grosset*). The court stated that there were no equitable considerations present to allow the derivative suit to go forward. The court sustained with leave to amend the demurrers to the first and fifth causes of action, reasoning that Appellants had failed to comply with the requirements of section 423, subdivision (m), and relying on *Farbstein v. Pacific Oil Tool Co., Ltd.* (1932) 127 Cal.App. 157 [15 P.2d 766] (*Farbstein*). The court sustained without leave to amend the demurrers to the sixth cause of action for inspection of records because "a demand to inspect may only come from shareholders." The court sustained with leave to amend the demurrer of Alpha and MMC to all the causes of action because there were no factual allegations of any misdeeds by those parties.

## II. *Second Amended Complaint*

Appellants filed the SAC in July 2008. The SAC alleged two causes of action: (1) conversion against Barragan, Ibarra, and AHP; and (2) declaratory relief as to whether the forfeiture was ultra vires and wrongful, such that their status as shareholders should be reinstated in order to allow a shareholder derivative action. As they argued in their opposition to the demurrers to the FAC, Appellants contended that section 423, subdivision (m) did not apply because "under California law, a shareholder is not required to first pay or tender the amount assessed as a precondition of filing an action if the assessment was fraudulent, ultra [vires] and/or void." Appellants alleged that there were other shareholders who did not pay the assessment, but those shares were not forfeited.

Respondents again filed demurrers, and a hearing was held in October 2008. The court again reasoned that Appellants had failed to comply with section 423, subdivision (m), and that there were insufficient facts to support the allegations of fraud. The court therefore sustained the demurrers. The court asked plaintiffs' counsel if there was any reason to allow leave to amend, but counsel replied that, based on the court's ruling, there was no way he could amend the complaint. The court therefore sustained the demurrers without leave to amend.

At the hearing, counsel for Alpha and MMC sought a motion to dismiss, stating that the court had sustained their demurrers to the FAC with leave to amend, but Appellants did not name Alpha and MMC in the SAC. The parties accordingly stipulated that Alpha and MMC be dismissed with prejudice. A written order, signed by the court, dismissing the complaint with prejudice as to all defendants, was entered, constituting the entry of judgment. (See Code Civ. Proc., § 581d; *Etheridge v. Reins Internat. California, Inc.* (2009) 172 Cal.App.4th 908, 913 [91 Cal.Rptr.3d 816].) Appellants filed a notice of appeal.

## DISCUSSION

Appellants challenge the trial court's reliance on section 423, subdivision (m), arguing that they were not required to comply with the statute because the assessment was void. Appellants also argue that the SAC sufficiently alleged a cause of action for declaratory relief and conversion. Appellants contend that the trial court erred in sustaining the demurrers to the derivative actions in the FAC.

"On appeal from an order dismissing a complaint after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. [Citations.]" (*Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1467 [78 Cal.Rptr.3d 483].) "When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We are to "decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be,

the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 [62 Cal.Rptr.3d 614, 161 P.3d 1168].)

## I. *Personal Causes of Action*

### A. *Application of Corporations Code section 423*

As noted above, section 423, subdivision (m) provides that "[n]o action shall be maintained to recover shares sold for delinquent assessments, upon the ground of irregularity in the assessment, irregularity or defect of the notice of sale, or defect or irregularity in the sale, unless the party seeking to maintain the action first pays or tenders to the corporation, or the party holding the shares sold, the sum for which the shares were sold, together with all subsequent assessments which may have been paid thereon and interest on such sums from the time they were paid." Under the plain language of the statute, therefore, Appellants cannot maintain their action because they concededly have not paid the challenged assessment.

Appellants contend, however, that section 423, subdivision (m) does not apply because the assessment was void. Appellants cite several reasons to support their contention that the assessment was void: (1) not all the shares were assessed; (2) the assessment was made in violation of AHP's articles and bylaws, and not all directors were given notice; (3) the assessment was part of a scheme to wrongfully freeze out shareholders; (4) the assessment was void for miscellaneous other defects.

### B. Kraft *and* Cheney

Appellants argue that an assessment is void if it is asserted against some, but not all shares, relying on *Kraft, supra*, 133 Cal. 64. In *Kraft*, the plaintiff received stock in a bank as security for a debt. The stock was forfeited after the defendant bank levied an assessment that was not paid. The shares were then sold to directors of the defendant bank. The plaintiff sued, arguing that the assessment was not collected upon any stock other than his own, but the trial court sustained a demurrer, pursuant to the predecessor to section 423, subdivision (m).[4] The California Supreme Court held that the statute did not

---

[4] The earlier statute, Civil Code former section 347, was almost identical to section 423, subdivision (m), and provided as follows: " 'No action must be sustained to recover stock sold for delinquent assessments, upon the ground of irregularity in the assessment, irregularity or defect of the notice of sale, or defect or irregularity in the sale, unless the party seeking to maintain such action first pays or tenders to the corporation, or the party holding the stock sold, the sum for which the same was sold, together with all subsequent assessments which may have been paid thereon, and interest on such sums from the time they were paid; and no

apply on the basis that the action was not "for the recovery upon the ground of irregularity in the assessment, irregularity or defect in the notice of sale, or defect or irregularity in the sale." (133 Cal. at p. 66.) Rather than being an irregular assessment, the court stated that it was void, citing two reasons.

■ First, the court stated that, "[i]f one fourth of the capital stock had not been subscribed, the defendant bank had no power to levy the assessment." (*Kraft, supra,* 133 Cal. at p. 66.) Second, the court stated that "[a]n assessment upon certain of the shareholders, and not upon others, is invalid." (*Id.* at pp. 66–67; see also *O'Dea v. Hollywood Cemetery Assoc.* (1908) 154 Cal. 53, 57 [97 P. 1] [stating that, if all the shares of stock in a corporation were of the same character, it must be conceded that an assessment on some, but not all the shares "would clearly be void for want of equality in its levy"].) The court therefore reasoned that the plaintiff was entitled to an equitable remedy and reversed the judgment sustaining the demurrer against the complaint. (*Kraft, supra,* 133 Cal. at pp. 67–69.)

■ Appellants also rely on *Cheney, supra,* 158 Cal. 342, in which the California Supreme Court cited "the settled law that an assessment can be legally levied upon the capital stock of a corporation by the board of directors only at a regular meeting of the board or at a special meeting thereof regularly called." (*Id.* at p. 345; see also *Raisch v. M. K. & T. Oil Co.* (1908) 7 Cal.App. 667, 669 [95 P. 662] ["An assessment upon the capital stock of a corporation can be levied by a board of directors only at a regular meeting, or at a special meeting regularly called. [Citations.] The proceedings by which the stock of a stockholder of a corporation is declared forfeited must be strictly pursued. The right to levy an assessment can only be legally exercised in the manner provided by law or by the charter of the corporation. [Citations.]"].) Thus, where an assessment was levied at a meeting that was held not in accordance with the corporate bylaws and without notice to two of the directors, the assessment was void. (*Cheney, supra,* 158 Cal. at p. 349.) Because the assessment was void, the predecessor statute to section 423, subdivision (m) did not apply, and the plaintiff should have been allowed to bring his action. (*Cheney,* at p. 351.)

Respondent AHP contends that *Kraft* stands only for the proposition that an assessment is void only if the forfeited shares are sold to the directors who caused the shares to be forfeited. *Kraft,* however, is not so limited. The statement quoted by AHP is taken out of context and actually is part of the court's description of the situation, stating that "[i]t would be strange if a court of equity in such case could not grant relief." (*Kraft, supra,* 133 Cal. at

---

such action must be sustained unless the same is commenced by the filing of a complaint and the issuing of a summons thereon within six months after such sale was made' . . . ." (*Kraft, supra,* 133 Cal. at p. 66.)

p. 68.) Furthermore, contrary to the argument of the Individual Respondents, the court's conclusion that the assessment was void was not based solely on the fact that "one fourth of the capital stock had not been subscribed." (*Id.* at p. 66.) Individual Respondents ignore the very next sentence, which states that "[a]n assessment upon certain of the shareholders, and not upon others, is invalid." (*Id.* at pp. 67–68; see also *O'Dea v. Hollywood Cemetery Assoc., supra,* 154 Cal. at p. 57.)

Individual Respondents distinguish *Cheney* by pointing out that the plaintiff in *Cheney* alleged facts supporting his allegation that the assessment was levied at a meeting lacking a quorum of the board. It is true that there were more specific allegations regarding the allegedly defective meeting in *Cheney*; however, there was a trial in Cheney. (*Cheney, supra,* 158 Cal. at p. 345.) Here, by contrast, Appellants' complaint was dismissed on a demurrer. The SAC alleged that the meeting at which the assessment was levied was not duly called and that Delgado and Ziperovich were both directors but were excluded from the process of deciding to levy the assessment. Construing as true these allegations and any facts that may be inferred from these allegations, Appellants have sufficiently alleged that the meeting was held not in accordance with the corporate bylaws.

C. Farbstein

The trial court did not address Appellants' allegations that the assessment was void *ab initio* because it was not levied upon all the shareholders and was not levied in accordance with AHP's articles and bylaws. The court merely stated that Appellants' failure to comply with section 423, subdivision (m) deprived them of standing, relying on *Farbstein.*

In *Farbstein*, the plaintiff alleged various irregularities in the manner in which meetings were called and an assessment was levied. The appellate court affirmed the trial court's sustaining of the defendant's demurrer. (*Farbstein, supra,* 127 Cal.App. at p. 169.) The court addressed each of the allegations of irregularities but found that they were not actionable, reasoning, for example, that the allegations regarding defective notice of meetings did not allege "that notice in fact was not given, or that the absent director or stockholder did not in fact have actual notice of the meetings referred to." (*Id.* at p. 165.) *Farbstein* quoted the predecessor statute to section 423, subdivision (m), but it never addressed the statute, nor did it ever cite the California Supreme Court cases of *Kraft* and *Cheney.* (127 Cal.App. at p. 165.)

*Farbstein* is not controlling because it never addressed the contention raised by Appellants that an assessment levied upon some but not all

shareholders is void, pursuant to *Kraft*. *Farbstein* simply did not address the applicability of the predecessor statute to section 423, subdivision (m), which is the heart of Appellants' argument. Appellants' counsel's concession that he could not amend the complaint in light of the trial court's ruling is understandable, because the court simply assumed that Appellants needed to comply with section 423, subdivision (m), without addressing Appellants' argument that this statute did not apply.

### D. *Allegations in the Complaints*

Appellants raised the issue of whether the assessment was void in their oppositions to the demurrers to the FAC, citing *Kraft* and the other cases on which Appellants continue to rely. They also alleged in the SAC that the assessment was not levied equally on all the shareholders and that the assessment was not approved in accordance with AHP's articles and bylaws.

For example, the SAC alleged that "[a]t least two shareholders of AHP, who had been business associates of BARRAGAN and/or IBARRA, were told that if they provided checks in the amount of the assessment, including checks written on accounts with inadequate funds, AHP would make no effort to collect against or negotiate said checks." Appellants further alleged that there were other AHP shareholders who did not pay the assessment and whose shares were not forfeited. Appellants accordingly alleged that the assessment was fraudulent and void.

The SAC further alleged that the assessment was not approved in accordance with AHP's articles and bylaws, stating that the assessment "was not presented to and voted on by AHP's Board of Directors at a duly called meeting." Furthermore, appellant Delgado and former plaintiff Ziperovich were directors, but they "were excluded from the process."

The SAC accordingly alleged that the assessment was void because (1) it was not assessed equally on all shareholders, and (2) it was not assessed pursuant to a properly called meeting, in violation of AHP's articles and bylaws. "On appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, the reviewing court must accept as true not only those facts alleged in the complaint but also facts that may be implied or inferred from those expressly alleged. [Citation.]" (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339]; see also *Buchanan v. Maxfield Enterprises, Inc.* (2005) 130 Cal.App.4th 418, 420–421 [29 Cal.Rptr.3d 909] [" 'To the extent there are factual issues in dispute . . . this court must assume the truth not only of all facts properly pled, but also of those facts that may be implied or inferred from those expressly alleged in the complaint.' "].) "The demurrer should be sustained

and leave to amend denied only 'where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but, under the substantive law, no liability exists. Obviously no amendment would change the result.' [Citations.]" (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 992 [74 Cal.Rptr.3d 47].) Here, if Appellants' allegations are deemed to be true, Appellants have sufficiently alleged that they are entitled to equitable relief, pursuant to *Kraft* and *Cheney*.

### E. *Conversion Claim*

■ The elements of a conversion action are " ' "the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use. [Citations.]" [Citation.]' " (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507 [85 Cal.Rptr.3d 268].) ■ "It is the uniform rule of law that shares of stock in a company are subject to an action in conversion. [Citations.]" (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 122 [55 Cal.Rptr.3d 621].)

The SAC contains allegations sufficient to state a cause of action for conversion: Appellants owned AHP shares and Barragan and Ibarra engaged in a scheme to deprive Appellants of their shares, Barragan and Ibarra wrongfully declared Alarcon's shares to be forfeited, with "no legal or factual basis for said forfeiture," although Appellants were warned that their shares would be forfeited if they did not pay the assessment, other shareholders who did not pay the assessment did not have their shares forfeited, and Appellants were harmed by the wrongful forfeiture "in an amount equal to the fair market value of the AHP shares at the time Defendants wrongfully exercised dominion over said shares."

Appellants have sufficiently alleged a cause of action. Individual Respondents' argument that Appellants have failed to allege a cause of action for conversion because of their failure to comply with section 423, subdivision (m) merely begs the question of whether the statute applies in light of the allegations of the SAC.

The trial court erred in sustaining the demurrers to Appellants' SAC.[5] The SAC's allegations, when construed as true, are sufficient to survive demurrer.

---

[5] Because we reverse, we do not address Appellants' arguments regarding their claim for declaratory relief and Alarcon's separate situation that Alarcon's shares were forfeited without reference to the assessment.

## II. Shareholder Derivative Causes of Action

Appellants contend that the trial court erred in sustaining the demurrers to their shareholder derivative causes of action in the FAC. The trial court relied on *Grosset, supra*, 42 Cal.4th 1100 to sustain the demurrer, stating that "to maintain a derivative suit, the plaintiff must maintain a status as shareholder."

The issue in *Grosset* was whether a shareholder who had lost his stock as a result of a merger had standing to pursue a derivative action, pursuant to section 800, subdivision (b).[6] (*Grosset, supra*, 42 Cal.4th at p. 1106.) The court discussed the purpose of derivative lawsuits and addressed the question of whether California, like Delaware, required shareholders'continuous ownership of the stock in order for them to maintain a derivative suit. (*Id.* at pp. 1108–1119.)

 Because "standing to assert a claim on a corporation's behalf is justified because of the stockholder relationship, which furnishes the interest and incentive for a stockholder to seek redress for the claimed corporate injury," the court stated that, "when the stockholder relationship is terminated, either voluntarily or involuntarily, a derivative plaintiff loses standing because he or she no longer has even an indirect interest in any recovery pursued for the corporation's benefit. [Citation.]" (*Grosset, supra*, 42 Cal.4th at p. 1115.) The court thus held that "California law, like Delaware law, generally requires a plaintiff in a shareholder's derivative suit to maintain continuous stock ownership throughout the pendency of the litigation. Under this rule, a derivative plaintiff who ceases to be a stockholder by reason of a merger ordinarily loses standing to continue the litigation." (*Id.* at p. 1119.) The court acknowledged that "equitable considerations may warrant an exception to the continuous ownership requirement if the merger itself is used to wrongfully deprive the plaintiff of standing," but declined to address the question because no such circumstances were present. (*Ibid.*)

The language of the *Grosset* court's holding indicates that the court was careful to leave open the possibility that equitable considerations might apply if the plaintiff was deprived wrongfully of standing. In fact, the court earlier had noted an exception under Delaware law, which provided that "[a] plaintiff who loses stock in a corporation as a result of a merger may nonetheless possess standing to pursue a derivative action . . . where the merger itself is the subject of a claim of fraud, perpetrated merely to deprive shareholders of

---

[6] Section 800 provides, in part, that "[n]o action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares . . . unless . . . : [¶] (1) The plaintiff alleges in the complaint that plaintiff was a shareholder, of record or beneficially, . . . at the time of the transaction or any part thereof of which plaintiff complains or that plaintiff's shares . . . thereafter devolved upon plaintiff by operation of law from a holder who was a holder at the time of the transaction or any part thereof complained of . . . ." (§ 800, subd. (b).)

the standing to bring a derivative action . . . ." (*Grosset, supra*, 42 Cal.4th at p. 1110; see *Lewis v. Ward* (Del. 2004) 852 A.2d 896, 902.) The plaintiff in *Grosset*, however, did not contend that this exception was applicable. (*Grosset, supra*, 42 Cal.4th at p. 1110.)

Thus, although *Grosset*'s holding that a plaintiff "generally" must maintain stock ownership throughout the litigation indicates that Appellants do not have standing because they no longer own AHP shares, the court explicitly stated that it would not address the situation presented here. (*Grosset, supra*, 42 Cal.4th at 1119.) That is, *Grosset* explicitly declined to consider whether equitable considerations might warrant an exception to the continuous ownership requirement. (*Ibid.*)

"It has been held that a person who has been deprived of his stock by fraudulent action of the corporation may bring a stockholder's suit." (*Brachman v. Hyman* (1941) 298 Mich. 344 [299 N.W. 101, 103]; see Annot., Right of former stockholder to maintain stockholder's suit (1947) 168 A.L.R. 906, § III.a., p. 912. ["One who has been fraudulently induced to transfer his stock remains the equitable owner of it, and may maintain a stockholder's suit."]; *Willcox v. Harriman Securities Corporation* (S.D.N.Y. 1933) 10 F.Supp. 532, 535–536 ["In the present case the plaintiffs are equitable owners of Liberty stock if the facts stated in the bill can be established as true. They show that they formerly held shares of stock but were induced by fraud to transfer the legal title to another. The case is one where a court of equity will impress a constructive trust on the shares in the hands of the fraudulent transferee and order a transfer back to the original owner, who is deemed to have held the equitable title all along."].) On the other hand, it also has been held that "one who has been defrauded of his stock must secure a restoration of his status as a stockholder before bringing a stockholder's suit." (Annot., right of former stockholder to maintain stockholder's suit, *supra*, 168 A.L.R. 906, § III.a., p. 912 [citing *Barnett v. Ground* (1924) 304 Mo. 593 [263 S.W. 836, 840]].)

In light of *Grosset*'s express reservation of the question of whether an equitable exception may apply, and in light of "the policy of deciding cases on their merits," we reverse. (*Jensen v. Royal Pools* (1975) 48 Cal.App.3d 717, 720, 722 [121 Cal.Rptr. 805].) Appellants have alleged equitable considerations that warrant an exception to the continuous ownership requirement, such as the allegations in the SAC that other shareholders were not required to pay the assessment and yet did not have their shares forfeited.

## DISPOSITION

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion. Appellants shall recover their costs on appeal.

Mallano, P. J., and Johnson, J., concurred.